# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Associated Bank, N.A.,

              Plaintiff,

      v.

Stewart Title Guaranty Company,

              Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-1124 ADM/JJG

_____

Jonathan D. Miller, Esq., Karl J. Yeager, Esq., and Paula Weseman Theisen, Esq., Meagher & Geer, P.L.L.P., Minneapolis, MN, on behalf of Plaintiff.

James M. Lockhart, Esq. and Jessica L. Meyer, Esq., Lindquist & Vennum P.L.L.P., Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On June 14, 2012, the undersigned United States District Judge heard oral argument on Defendant Stewart Title Guaranty Company's ("Stewart Title") Motion for Summary Judgment [Docket No. 13] and Plaintiff Associated Bank, N.A.'s ("Associated Bank") Motion for Summary Judgment [Docket No. 17].  For the reasons set forth below, both Motions are granted in part and denied in part.

## II.  BACKGROUND[1]

Associated Bank alleges Stewart Title breached its contractual duties to indemnify and defend Associated Bank as required by their title insurance policy.

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  As both parties have moved for summary judgment, any disputed facts are noted.

**A.      Associated Bank's Loan to and Mortgage from Randy S. Arneson**

In February 2007, Associated Bank loaned $450,250 to Randy S. Arneson ("Arneson")

based on his signed promissory note.  Lockhart Aff. [Docket No. 16] Ex 3.  The loan was made

in connection with Arneson's purchase of vacant land in Hennepin County, Minnesota (the

"Property"), and was secured by a mortgage on the Property (the "Mortgage").  Id. Exs. 2, 4.

Arneson's loan application was provided to Associated Bank's loan officer Justin Link

("Link") by broker New Day Capital, LLC ("New Day Capital").  Id. Ex. 5 at AB002560.  New

Day Capital is not on Associated Bank's list of approved brokers.  Id.  Contrary to Associated

Bank's policies and recommended practices, Link did not attend the loan closing to witness

Arneson's signature on the Mortgage and other documents and to verify their accuracy.  Id. Ex.

18 at 79:2-80:4, Ex. 20 at 25:1-25:15, Ex. 21 at 43:12-45:20.

**B.      The Policy**

To insure the Mortgage, Associated Bank purchased a lender's title insurance policy (the

"Policy") from Stewart Title in the face amount of $450,250.  Id. Ex. 1 (Policy).

**1.      Insuring Provision**

The insuring provision of the Policy provides, in relevant part:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE
> EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE
> B AND THE CONDITIONS AND STIPULATIONS, STEWART
> TITLE . . . insures . . . against loss or damage . . . sustained or
> incurred by the insured by reason of:
> . . .
>
> 5.      The invalidity or unenforceability of the lien of the insured
>         mortgage upon the title.

Policy at AB002693.  The Policy also requires Stewart Title to "pay the costs, attorneys' fees and

expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations." Id.

### 2.      Duty to Defend Provision

The Policy Conditions and Stipulations include a duty-to-defend provision which states, in pertinent part:

> Upon written request by the insured . . . the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. . . . The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

Policy at AB002701 ¶ 4(a).

### 3.      Exclusions

The Policy includes a section entitled "Exclusions from Coverage" that states, in relevant part:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
> . . .
>
> 3.      Defects, liens, encumbrances, adverse claims or other matters:
>
> (a)      created, suffered, assumed or agreed to by the insured claimant;
> . . .
>
> (c)      resulting in no loss or damage to the insured claimant.

Policy at AB002693-94.

C.      **Arneson's Challenge to the Mortgage**

On September 20, 2007, Arneson contacted Associated Bank claiming he had discovered a $450,000 loan of which he was previously unaware. Lockhart Aff. Ex. 6 at AB004368; Ex. 17 at AB004723. After initially claiming the signature on the Note and Mortgage was not his, id. Ex. 6, Arneson alleged the documents were blank when he signed them. Id. Ex. 9. Upon investigating, Associated Bank discovered the payments on the loan had been made by a Minnesota developer, 10Spring Homes, Inc. Lockhart Aff. Ex. 21 at 29:11-12.

D.      **Associated Bank's Foreclosure Action**

Payments on the loan ceased, and on April 17, 2008, Associated Bank commenced a foreclosure action (the "Foreclosure Action") against the Arnesons in Hennepin County District Court. Lockhart Aff. Ex. 7. Associated Bank alleged Arneson was in default under the Note and Mortgage, and sought to foreclose its Mortgage against the Property. In an Answer dated May 19, 2008, the Arnesons asserted affirmative defenses to the Foreclosure Action, including the defense that the Note and Mortgage were obtained by fraud. Miller Decl. [Docket No. 22] Ex. K ("Answer"). Specifically, the Arnesons alleged:

> 8.      . . . Plaintiff's Complaint fails as the instruments upon which Plaintiff bases its action were obtained from Defendant Randy S. Arneson by fraud and misrepresentation, as follows:
>
> > a)      Defendant Randy S. Arneson did not enter into a Purchase Agreement with Fox Den Development, LLC, 10 Spring, LLC or with Scott Rosenlund for the purchase of the real property referenced in Plaintiff's Complaint;
> >
> > b)      On or about February 2, 2007, Randy S. Arneson executed a blank Note and a blank Mortgage at the offices of New Day Capital, LLC in Chanhassen, Minnesota;

4

c)    There was not a notary public present at the time
Defendant Randy S. Arneson executed the blank Note
and Mortgage on or about February 2, 2007 at the
offices of New Day Capital, LLC in Chanhassen,
Minnesota;

d)    Defendant Randy S. Arneson did not attend a real
property closing/settlement on or about February 2,
2007 at the offices of Title Mark, New Day Capital,
LLC, or Associated Bank, N.A.

Id. at 2.

In July, 2008, the Arnesons filed a Third Party Complaint in the Foreclosure Action. Id.

Ex. L ("Third Party Complaint"). The Third Party Complaint asserted claims for fraud,

conversion, and unjust enrichment against Shin-On Lindberg, Scott R. Rosenlund, Celeste Skaar,

and their affiliated entities 10Spring Homes, Inc., 10Spring Enterprises LLC, Fox Den Dev LLC,

and New Day Capital. Id. ¶¶ 1-8, 10-28, 33-37. The Third Party Complaint alleged Lindberg,

Rosenlund, Skaar, and their affiliated entities fraudulently led Arneson to believe he was part of

a real estate investment group that was obtaining financing for the purchase of vacant land and

persuaded him to sign a blank property purchase agreement, blank promissory note, and blank

mortgage as a part of their scheme. Id. ¶¶ 10-15, 20-26. According to the Third Party

Complaint, Lindberg contacted Arneson the evening of February 2, 2007, and informed him it

was necessary to meet immediately with Lindberg's associate to proceed with a real estate

investment opportunity related to the Property. Id. ¶ 23. Arneson met with the associate at 9:30

p.m. that evening and executed a blank purchase agreement for the Property, a blank promissory

note, and a blank mortgage. Id. ¶¶ 24-25. The Third Party Complaint further alleged Lindberg,

Rosenlund, Skaar, and their affiliated entities converted the $450,000 in loan proceeds from

Associated Bank for their own use, id. ¶ 28, and that Skaar, as an officer of New Day Capital,

5

breached her fiduciary duties as the mortgage broker for Arneson and the purported real estate investment group by falsifying Arneson's assets on the loan application to Associated Bank  Id. ¶¶ 29-32.  Associated Bank was not named as a third party defendant in the Third Party Complaint.  See generally id.

E.      **Associated Bank's Tender of Defense to Stewart Title**

On May 11, 2009, Associated Bank sent a letter to notify Stewart Title of Arneson's assertion in the Foreclosure Action that the Mortgage was unenforceable.  Miller Decl. ¶ 3, Ex. E.  Associated Bank stated it was "tendering th[e] matter to Stewart Title for defense and indemnification of Associated under the policy."  Id.  Associated Bank included copies of the Arnesons' Answer and Third Party Complaint.  Id.  A certified mail signature receipt shows the letter was received by Stewart Title on May 14, 2009.  Id. Ex. E at 2.  Stewart Title did not acknowledge or respond to the May 11, 2009 letter.  Id. ¶ 3.

On December 2, 2009, Associated Bank sent a letter informing Stewart Title that a private mediation was scheduled for December 9, 2009, in the Foreclosure Action and inviting Stewart Title to participate.  Id. ¶ 4, Ex. F at 1.  A delivery service e-mail confirms the letter was delivered to Stewart Title on December 3, 2009.  Id. Ex. F at 3.  Stewart Title did not respond to the letter or attend the mediation.[2]  Id. ¶ 4.

F.      **Settlement of Foreclosure Action and Loss under the Policy**

In late June, 2010, Associated Bank and the Arnesons executed a settlement agreement

---

[2] Stewart Title contends it has no record of having received the letters tendering defense, but acknowledges it has no evidence to rebut the evidence submitted by Associated Bank that the tenders were sent and delivered.  Def.'s Mem. of Law in Opp. of Summ. J. [Docket No. 23] at 2.

(the "Settlement Agreement") in the Foreclosure Action.  Miller Decl. Ex. G (Settlement Agreement).  At the time the Settlement Agreement was executed, the market value of the Property secured by the Mortgage was approximately $126,000.  Lockhart Aff. Ex. 22 at 7.

Under the Settlement Agreement, Associated Bank and the Arnesons acknowledged the Mortgage and Note were invalid and unenforceable.  Settlement Agreement ¶ 4.  Additionally, the Arnesons agreed to pay Associated Bank $175,000.  Id.  As security for the new obligation, the Arnesons provided a new mortgage against the Property, as well as mortgages against their condominium and hunting land.  Id.

Associated Bank and the Arnesons filed a Stipulation for Order and Order for Judgment in the Foreclosure Action on February 17, 2011.  Miller Decl. Ex. H.  A judgment declaring the original Mortgage invalid and unenforceable was entered the same day.  Id.  The Arnesons fully satisfied their new $175,000 obligation to Associated Bank on or before June 27, 2011.  Lockhart Aff. Ex. 14; Miller Decl. ¶ 5.

On March 22, 2011, Associated Bank sent Stewart Title a Proof of Loss under the Policy, asserting a total loss of $373,115.96.  Lockhart Aff. Ex. 13.

G.     **Present Action**

One week after sending the Proof of Loss to Stewart Title, Associated Bank filed this action for breach of contract.  Compl. [Docket No. 1].  Associated Bank alleges Stewart Title breached its duties to indemnify and defend under the Policy.  Id.  ¶¶ 19-23.  Stewart Title denies the allegations.  Am. Answer [Docket No. 4] ¶¶ 18-23.  Both parties now move for summary judgment.

**III. DISCUSSION**

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c)).[3]  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig, 54 F.3d at 470.  The nonmoving party, however, may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Insurance Policy Interpretation**

Interpretation of an insurance policy and its application to the facts of the case are legal questions.  Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 406 (Minn. 1998).  The existence of a legal duty to defend or indemnify is also a question of law.  Id.

Under Minnesota law,[4] "[g]eneral principles of contract interpretation apply to insurance policies."  Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998). Language in an insurance policy is given its plain and ordinary meaning, Bobich v. Oja, 104 N.W.2d 19, 24 (Minn. 1960), and policy terms are construed "according to what a reasonable person in the position of the insured would have understood the words to mean."  Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc., 258 N.W.2d 570, 572 (Minn. 1977).  Ambiguous

---

[3] The summary judgment standard was previously located in Rule 56(c).

[4] State law controls insurance coverage actions involving diversity of citizenship.  Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2011).  Thus, Minnesota law applies here.

language is construed against the insurer.  <u>Progressive Specialty Ins. Co. v. Widness</u>, 635

N.W.2d 516, 518 (Minn. 2001).

"While the insured bears the initial burden of demonstrating coverage, the insurer carries

the burden of establishing the applicability of exclusions." <u>Travelers Indem. Co. v. Bloomington</u>

<u>Steel & Supply Co.</u>, 718 N.W.2d 888, 894 (Minn. 2006).  Exclusions from coverage "are

construed narrowly and strictly against the insurer." <u>Id.</u>

## C.   Duty to Indemnify

The parties' dispute over the duty to indemnify turns on whether Associated Bank's loss

should be measured as of the time the loan was initiated or, instead, at the time the Foreclosure

Action concluded.

Associated Bank argues its loss should be measured as of the time the loan was initiated,

reasoning it was damaged at that time because it would not have agreed to provide a $450,025

loan had it known the loan was not secured by a valid mortgage.  Associated Bank further

contends it could not foreclose on the Property because the mortgage was wholly invalid, and

thus conclusion of the Foreclosure Action is not the proper time for measuring its loss.

Accordingly, Associated Bank calculates its loss as the value of the Mortgage at the time the

loan was initiated ($450,250), minus Arneson's payment under the Settlement Agreement

($175,000), plus interest on the unpaid balance of the loan ($123,510), plus post-tender

attorney's fees incurred in the Foreclosure Action ($33,377), for a total loss of $432,137.

In contrast, Stewart Title argues Associated Bank did not recognize a loss until the

conclusion of the Foreclosure Action, at which time it was determined that the loan would not be

repaid.  Stewart Title reasons that had the Mortgage been valid at that time, the amount

Associated Bank would have recovered based on the Mortgage would have been the Property's market value, which was then approximately $126,000. Associated Bank received $175,000 in settlement of the Foreclosure Action. Thus, argues Stewart Title, the loss sustained by Associated Bank on its loan was not due to the invalidity of the Mortgage, but rather to a decline in the value of the Property securing the loan, and this type of loss is not insured by the Policy.[5]

Published decisions in Minnesota and the Eighth Circuit have not directly addressed the issue of when an insured mortgagee's loss is measured. However the majority of courts considering the issue have held that such loss cannot be measured until the note has not been repaid and the security for the mortgage is shown to be inadequate. See, e.g., Falmouth Nat'l Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1063 (1st Cir. 1990); Marble Bank v. Commonwealth Land Title Ins. Co., 914 F. Supp. 1252, 1254 (E.D.N.C. 1996); Blackhawk Prod. Credit Ass'n v. Chicago Title Ins. Co., 423 N.W.2d 521, 525 (Wis. 1988). This rule applies even where an insured mortgage has been wholly invalidated, because "[i]f the plaintiff had received a valid mortgage and foreclosed it, all he would have been able to realize would have been the value of the property." Demopoulos v. Title Ins. Co., 298 P.2d 938, 939 (N.M. 1956).

The majority view comports with the nature of a title insurance policy. "A title policy is a contract of indemnity, not of guaranty, and provides reimbursement for actual loss only. A title insurance policy provides for indemnity only to the extent that [the insured's] security is impaired and to the extent of the resulting loss that it sustains." Gibraltar Sav. v. Commonwealth Land Title Ins. Co., 905 F.2d 1203, 1205 (8th Cir. 1990) (alteration in original)

---

[5] As stated in the insuring provision, the Policy insures only against loss or damage sustained by an insured due to "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title." Policy at AB002693 ¶ 5.

(quotation marks and citations omitted).  A title insurance policy "does not guarantee either that the mortgaged premises are worth the amount of the mortgage, or that the mortgage debt will be repaid."  Blackhawk, 423 N.W.2d at 525.  Rather, the "insurable value of a mortgage on real estate is the fair market value of the realty which secures the mortgage, and is not controlled by the original purchase-price of the mortgage."  Id. at 526 (quoting Atlanta Title & Trust Co. v. Allied Mortg. Co., 12 S.E.2d 147, 149 (Ga. 1941)); see also Omega Court v. Title Ins. Co. of Minn., No. CO-90-2395, 1991 WL 85237, at *2 (Minn. Ct. App. May 28, 1991) ("A mortgagee's actual loss is the difference between the value of the mortgage subject to the defect and what its value would have been had the defect not existed.").

Here, it is undisputed that at the conclusion of the Foreclosure Action the market value of the Property was $126,000.  Had the Arnesons not challenged the validity of the Mortgage, Associated Bank would have been allowed to proceeded with its foreclosure sale and could have sold the Property after the redemption period for market value, or approximately $126,000.  Instead, Associated Bank received $175,000 under the Settlement Agreement – an amount considerably in excess of the value of the insured Mortgage.  Accordingly, Associated Bank did not sustain an insured loss for which Stewart Title was obligated to indemnify.  Therefore, with respect to the duty to indemnify, Stewart Title's Motion is granted, and Associated Bank's Motion is denied.

**D.     Duty to Defend**

The parties also dispute whether Stewart Title had a duty to defend against the Arnesons' claim in the Foreclosure Action that the Mortgage was invalid and unenforceable.  Associated Bank contends the Arnesons' Answer raised a claim that was adverse to the Mortgage, and

therefore Stewart Title was obligated to defend against the claim.  Stewart Title argues the duty

to defend was not triggered because the Policy does not require Stewart Title to litigate a

foreclosure action voluntarily initiated by an insured, and because the Arnesons' claim was

excluded from coverage as a defect created by Associated Bank.

The duty to defend is broader than the duty to indemnify.  Enron Corp. v. Lawyers Title

Ins. Co., 940 F.2d 307, 310 (8th Cir. 1991); Wooddale Builders, Inc. v. Maryland Cas. Co., 722

N.W.2d 283, 302 (Minn. 2006); Rechtzigel Trust v. Fidelity Nat'l Ins. Co. of N.Y., 748 N.W.2d

312, 320 (Minn. Ct. App. 2008) (citing Franklin, 574 N.W.2d at 406).  Whether a duty to defend

exists is determined by comparing the allegations in the underlying claim to the relevant policy

language.  Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 258 (Minn. 1993).  If the

pleadings in the underlying action raise a claim arguably within the scope of coverage, the duty

to defend applies.  Rechtzigel, 748 N.W.2d at 320 (citing Ross v. Briggs & Morgan, 540 N.W.2d

843, 847 (Minn. 1995)).  See also Enron, 940 F.2d at 310 (stating an insured "must defend a

claim the policy does not cover if the allegations of the complaint state on their face a claim

against the insured to which the policy *potentially* applies") (emphasis in original) (internal

quotation marks omitted).

The duty to defend is determined at the time the insured tenders defense of the claim to

the insurer.  Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 166 (Minn. 1986).  At that time,

if the insurer knows of facts indicating there may be a claim, either from what is directly stated

or inferred in the underlying complaint, or if the insured tells the insurer of such facts, "the

insurer must either accept tender of the defense or further investigate the potential claim."

Garvis, 497 N.W.2d at 258.

The insurer bears the burden of proving that the claim clearly falls outside the coverage afforded by the policy.  Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 390 (Minn. 1979).  "Any ambiguity is resolved in favor of the insured. . . . If the claim is not clearly outside coverage, the insurer has a duty to defend"  Id.

Stewart Title first argues the Policy does not obligate it to prosecute a foreclosure action that is voluntarily initiated by an insured, and thus the duty to defend was not triggered here. The Policy's duty-to-defend provision states that Stewart Title "shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured . . . ."  Policy at AB002701 ¶ 4(a).  The Arnesons' Answer challenged the validity of the Mortgage by alleging it was obtained by fraud and misrepresentation.  Answer ¶ 8.  Therefore, the Answer raised a claim adverse to Associated Bank's insured interest.  The duty-to-defend provision does not contain an exception for adverse claims raised in proceedings initiated by insureds.  Thus, the fact that Associated Bank voluntarily commenced the Foreclosure Action does not excuse Stewart Title from the obligation to defend against the adverse claim raised by the Arnesons' Answer.  Cf. Enron, 940 F.2d at 309–11 (finding an insurer's duty to defend triggered by a claim raised in an answer to the insured's affirmatively filed action).

Stewart Title also contends an affirmative defense does not give rise to a duty to defend. However, the Policy's duty-to-defend provision does not limit the types of pleadings that will trigger the duty; instead, the provision states generally that Stewart Title shall "provide for the defense of an insured *in litigation* in which any third party asserts a claim adverse to the title or interest as insured."  Policy at AB002701 ¶ 4(a) (emphasis added); see also Joyce D. Palomar, 1 Title Insurance Law § 11:2 at 896-97 (2011-2012 ed.) ("Subsequent amendments to a complaint,

13

answers, counterclaims or cross-claims all are included among the pleadings that invoke the insurer's duty to defend.").[6]

Stewart Title next argues it was not obligated to defend the Arnesons' claim because the claim was based on a defect "created, suffered, assumed or agreed to by the insured claimant." Policy at AB002694 ¶ 3(a).  Relying on the allegations in the Arnesons' Answer that the Note and Mortgage were blank when Arneson signed them at New Day Capital, Stewart Title contends Associated Bank's failure to procure the documents in an enforceable manner created the defect in the Mortgage.  Stewart Title further argues Link's improper behavior in transacting business with an unapproved mortgage broker, failing to verify the accuracy of the documents, and failing to attend the loan closing led to the defect on which the Arnesons' claim was based.

Associated Bank insists the "created or suffered" exception does not apply, because the Arnesons' pleadings do not allege that the defect – i.e., the fraud – was created by Associated Bank.  Instead, argues Associated Bank, the pleadings allege the fraud was committed by Lindberg, Roselund, Skaar, New Day Capital, and others.

The applicability of the coverage exclusion for adverse claims "created, suffered, assumed, or agreed to by the insured claimant," Policy at AB002693-94, is generally limited to cases where "the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured."  <u>Brown v. St. Paul Title Ins. Corp.</u>, 634 F.2d 1103, 1108 n.8

---

[6] Notably, the Eighth Circuit has applied the duty-to-defend analysis to a claim raised in an Answer to a foreclosure proceeding initiated by an insured mortgagee.  <u>See</u> <u>Enron</u>, 940 F.2d at 309-11.  Unlike the Policy here, the policy at issue in <u>Enron</u> explicitly provided for the insurer's defense of pleadings interposed in a foreclosure of the insured mortgage.  <u>Id.</u> at 309. Although the Policy here does not expressly include such pleadings, it does not expressly exclude them.  Thus, the fact that the challenge to the Mortgage was raised in an affirmative defense does not excuse Stewart Title's duty to defend under the Policy.

(8th Cir. 1980).  "[C]ourts have not permitted the insurer to avoid liability if the insured was

innocent of any conduct causing the loss or was simply negligent in bringing about the loss."  Id.

Cases interpreting the meaning of "created," "suffered," "assumed," and "agreed to" construe the

terms to require some level of intent.  Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d

899, 905 (8th Cir. 1995).  In other words, the exception "requires the insured to intend the defect

to occur.  Intent implies knowledge of the intended defects by the insured."  Sims v. Sperry, 835

P.2d 565, 571 (Colo. App. 1992).  Additionally, a defect falling within this exclusion "must have

been created by the insured claimant and not by some other force."  Resolution Trust Corp. v.

Ford Mall Assoc. Ltd. Partnership, 819 F. Supp. 826, 840 (D. Minn. 1991).

 Comparing the relevant Policy language with the allegations in the underlying claim and

the facts known to Stewart Title at the time the defense was tendered, the Court finds the

exclusion did not clearly apply, because the claim did not clearly allege the defect – i.e., the fraud

– was "created, suffered, assumed or agreed to *by the insured claimant*."  Policy at AB002694 ¶

3(a) (emphasis added).  Although the Arnesons' Answer alleges the Mortgage was obtained by

fraud and misrepresentation and was blank when signed, the Answer does not allege Associated

Bank participated in or knew of the fraud, or that it intended the fraud to occur.[7]  Additionally, the

---

   [7] Stewart Title argues New Day Capital was acting as Associated Bank's agent, and thus New Day Capital's knowledge of the fraud can be imputed to Associated Bank.  However, the Arnesons' pleadings allege only that New Day Capital was acting as the mortgage broker for Arneson and the purported real estate investment group; they do not allege New Day Capital was an agent of Associated Bank.  See Third Party Complaint ¶ 31.  Moreover, an exception to the general rule that an agent's knowledge is imputed to the principal exists where an agent is acting fraudulently and has a motive for concealing its actions from the principal.  Sussel Co. v. First Fed. Sav. & Loan Assoc. of St. Paul, 238 N.W.2d 625, 627 (Minn. 1976).  Similarly, a principal is generally not liable for the unauthorized intentional tort of its agent.  Semrad v. Edina Realty, Inc., 439 N.W.2d 528, 535 (Minn. 1992).  Thus, even if the Arnesons' pleadings were construed as alleging New Day Capital was an agent for Associated Bank, knowledge of or liability for

Third Party Complaint, which was provided to Stewart Title at the time the defense was tendered, describes the circumstances surrounding Arneson's execution of the blank Mortgage and does not allege Associated Bank was present at the signing or involved in the real estate investment sham. Thus, the Answer, particularly when read in context with the Third Party Complaint, cannot be clearly construed as a claim by the Arnesons that the defect in the Mortgage had been created by Associated Bank.

Link's deliberate failure to comply with Associated Bank's policies does not alter this conclusion, because his mishandling of the Arneson loan file does not equate to an intent to defraud. Instead, the Answer and Third Party Complaint can be reasonably construed to allege the fraud had not been created by Associated Bank, but rather "by some other force." Resolution Trust Corp., 819 F. Supp. at 840.[8] Thus, the Arnesons' claim was not clearly excluded from the Policy's coverage, and Stewart Title had a duty to defend. See Gruetzmacher v. Acuity, 393 F. Supp. 2d 860, 864 (D. Minn. 2005) ("[I]n determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured and . . . unless the pleadings and facts clearly

New Day Capital's fraud would not automatically be attributed to Associated Bank.

[8] The absence of allegations that Associated Bank acted fraudulently in procuring the Mortgage distinguishes this case from two recently decided cases in this district where the "created or suffered" exclusion was found to apply as a matter of law. See 266 Summit, LLC v. Lawyers Title Ins. Corp., Civil No. 10-4051, 2011 WL 3020301, at *7 (D. Minn. July 22, 2011); Bankruptcy Estate of Ketterling v. Chicago Title Ins. Co., Civil No. 09-1776, 2010 WL 3926254, at *4 (D. Minn. Oct. 1, 2010). In those cases, the insured parties were alleged to have obtained their interests through their own fraudulent conduct, and not the fraud of others. See 266 Summit, 2011 WL 3020301, at *7 (finding no duty to defend where insured was alleged to have acquired its interest as a result of its intentional wrongful conduct and misrepresentations); Ketterling, 2010 WL 3926254, at *4 (holding the "created or suffered" exclusionary clause applied where the insureds were alleged to have obtained title due to their fraudulent actions and misrepresentations).

establish that the claim falls outside the policy terms, the duty to defend arises.") (quotation

marks and alterations omitted).

 The unrebutted evidence is that Associated Bank tendered defense of the Arnesons' claim

to Stewart Title on May 11, 2009, and that Stewart Title did not respond.  Miller Decl. ¶ 3, Ex. E.

Thus, Stewart Title breached its duty to defend under the Policy.  As a result of the breach,

Stewart Title is liable to Associated Bank for post-tender attorney's fees and expenses incurred by

Associated Bank to defend the adverse claim.[9]  Therefore, with respect to the duty to defend,

Stewart Title's Motion is denied, and Associated Bank's Motion is granted.

**E.      Associated Bank's Legal Fees in This Action**

 Associated Bank also seeks to recover its attorney's fees incurred in bringing this breach

of contract action.  The general rule in Minnesota is that each party bears its own attorney's fees

unless a statutory or contractual exception applies.  In re Silicone Implant Ins. Coverage Litig.,

667 N.W.2d 405, 422 (Minn. 2003).  However, a narrow exception exists for attorney's fees

expended by an insured when an insurer breaches its duty to defend.  Id.  "When a breach of the

duty to defend occurs, the insured 'is entitled to be reimbursed for attorneys fees and costs

expended' to force the insurer to pay for the defense."  Chicago Title Ins. Co. v. F.D.I.C., 172

F.3d 601, 606 (8th Cir. 1999) (quoting Indep. Sch. Dist. No. 697 v. St. Paul Fire & Marine Ins.

Co., 515 N.W.2d 576, 581 (Minn. 1994)); see also M.A. Mortenson Co. v. Va. Sur. Co., Inc.,

---

[9] Associated Bank has filed billing statements detailing the post-tender fees it incurred in this action.  Stewart Title has not raised an objection to the reasonableness of the fees.  The Court finds the fees and expenses reasonable with the exception of $616.60 in fees and expenses charged on May 11 and 12, 2009, as the evidence shows Stewart Title did not receive Associated Bank's letter tendering defense until May 14, 2009.  Therefore, $616.60 will be deducted from the amount Associated Bank seeks as reimbursement for defending the Foreclosure Action, which leaves a total of $32,760.28 in post-tender fees to be reimbursed by Stewart Title.

17

Civil File No. 10-3075, 2011 WL 3610435, at *8 (D. Minn. Aug. 15, 2011) (awarding attorney

fees expended by insured in obtaining declaration that insurer breached duty to defend); Jostens,

387 N.W.2d at 168 (allowing insured to recover attorney's fees and costs incurred in bringing a

successful action for reimbursement of defense costs following insurer's breach of duty to

defend).  Contrary to Stewart Title's assertion, the exception is not limited to declaratory

judgment actions.  See Jostens, 387 N.W.2d at 166 (applying exception where "[n]o one . . .

sought a declaratory judgment to resolve the arguable issues of coverage and the duty to defend").

Associated Bank was forced to bring this action to require Stewart Title to pay for the

defense.  Therefore, Associated Bank may recover attorney fees and costs incurred in this action

to the extent such fees and costs relate to Stewart Title's duty to defend.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 13] is

**GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion for Summary Judgment

[Docket No. 17] is **GRANTED IN PART** and **DENIED IN PART**.

Associated Bank is awarded judgment in the amount of $32,760.28, plus the amount of

attorney's fees incurred in this action to the extent such fees relate to Stewart Title's duty to

defend.  The parties are encouraged to agree on the amount of attorney's fees.  If the parties are

unable to agree, counsel for Associated Bank shall submit an affidavit and corresponding invoices

attesting to the amount of fees incurred in this action that pertain to Stewart Title's duty to defend

by August 8, 2012.  Any objection by Stewart Title to the fees detailed in Associated Bank's

affidavit shall be made by a letter brief not exceeding five (5) pages and shall be filed by August

18

15, 2012.  The final determination of the amount of Associated Bank's judgment will be

determined thereafter and duly entered.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


BY THE COURT:


Dated:   July 27, 2012                    s/Ann D. Montgomery
                                          ANN D. MONTGOMERY
                                          U.S. DISTRICT JUDGE